Ellen M. Bronchetti (SBN 226975)
Daniel S. Smith (SBN 312330)
GREENBERG TRAURIG, LLP
12830 El Camino Real, Suite 350
San Diego, CA 92130
Telephone: (619) 848-2500
Facsimile: (619) 393-0877
ellen.bronchetti@gtlaw.com
daniel.smith@gtlaw.com

Attorneys for Defendants
LOCKTON COMPANIES, LLC, LOCKTON INSURANCE BROKERS OF SAN DIEGO, INC., and LOCKTON COMPANIES, LLC – PACIFIC SERIES

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW ALEXANDER DE LARGE, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOCKTON COMPANIES, LLC, a Missouri limited liability company; LOCKTON INSURANCE BROKERS OF SAN DIEGO, INC., a California corporation; LOCKTON COMPANIES, LLC – PACIFIC SERIES, an unknown business entity; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO. '25CV1056 WQHMMP<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**<br><br>**[28 U.S.C. §§ 1332, 1441, and 1446]**<br><br>*[Filed concurrently with the Declarations of Ellen Bronchetti and Beth Truax, Corporate Disclosure Statement, and Civil Case Cover Sheet]*<br><br>Removed from San Diego County Superior Court, Case No. 25CU010975C<br><br>Action Filed: February 28, 2025 |

TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants Lockton Companies, LLC, Lockton Insurance Brokers of San Diego, Inc., and Lockton Companies, LLC – Pacific Series (collectively, "Lockton" or "Defendants") file this Notice of Removal ("Notice") pursuant to 28 U.S.C. sections 1332, 1453, and 1711 to effect the removal of the above-captioned action, which was commenced in the Superior Court of the State of California for the County of San Diego. This Court has original subject matter jurisdiction over Plaintiff's lawsuit under 28 U.S.C. § 1332(d) because (1) Plaintiff seeks to represent more than 100 class members, (2) no defendant is a state, state official or other governmental entity, (3) there is sufficient diversity among the parties, and (4) Plaintiff's allegations place more than $5 Million in controversy, exclusive of interest and costs.[1]

## I.     NATURE OF THIS REMOVAL PLEADING

1.     Lockton hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a). In this regard, a notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) ("*Dart Cherokee*"). Rather, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553-54. As held by the Ninth Circuit:

> when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state

---

[1] This Notice of Removal relies on the nature and amount of damages that Plaintiff's Complaint places in controversy. Defendants refer to specific damage amounts and cite comparable cases solely to establish the amount in controversy exceeds the jurisdictional minimum. Defendants maintain that Plaintiff's claims lack merit that they cannot proceed on a class-wide basis, and that Defendants are not liable to Plaintiff or any member of the putative class for any amount whatsoever. Indeed, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendants'] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.

*Arias v. Residence Inn*, 936 F.3d 920, 924 (9th Cir. 2019) (rejecting *sua sponte* remand). If the Court requires that Lockton prove the facts alleged in this pleading, or to otherwise establish jurisdiction, Lockton is prepared to do so. Similarly, Lockton is prepared to establish this Court's jurisdiction in response to a motion to remand filed by Plaintiff seeking to challenge the factual basis for this Court's jurisdiction (though Defendants doubt any such challenge could or will be made, as the facts establishing this Court's jurisdiction cannot be reasonably disputed).

## II.     THE ACTION – PLEADINGS, PROCESS AND ORDERS

2.      On February 28, 2025, Plaintiff Andrew Alexander De Large ("Plaintiff") filed a putative class action Complaint in the Superior Court of California for the County of San Diego ("State Court"), entitled *Andrew Alexander De Large v. Lockton Companies, LLC, et al.*, Case No. 25CU010975C. A true and correct copy of the Complaint is attached as **Exhibit A** to the Declaration of Ellen Bronchetti ("Bronchetti Decl.").

3.      On March 25, 2025, Defendants' counsel inquired with Plaintiff's counsel as to whether Plaintiff had served the Complaint upon Defendants. The same day, Plaintiff's counsel's office responded, indicating that the Complaint had not yet been served and asked whether Defendants' counsel would accept service on behalf of Defendant via Notice and Acknowledgement of Receipt. On March 28, 2025, Defendants' counsel informed Plaintiff's counsel that they would accept service on behalf of Defendants. **Exhibit B** to Bronchetti Decl.

4.      On April 14, 2025, Defendants returned the signed Notice and Acknowledgement of Receipt to Plaintiff's counsel. **Exhibit C** to Bronchetti Decl.

5.      On April 24, 2025, Defendants filed their Answer to Class Action Complaint. **Exhibit D** to Bronchetti Decl.

6. The Complaint asserts the following causes of action: (1) Failure to Pay Minimum Wages (Cal. Labor Code §§ 204, 1194, 1194.2 and 1197); (2) Failure to Pay Overtime Compensation (Cal. Labor Code §§ 1194 and 1198); (3) Failure to Provide Meal Periods (Cal. Labor Code § 226.7 and 512); (4) Failure to Authorize and Permit Rest Breaks (Cal. Labor Code § 226.7); (5) Failure to Indemnify Necessary Business Expenses (Cal. Labor Code § 2802); (6) Failure to Timely Pay Wages at Termination (Cal. Labor Code § 201-203); (7) Failure to Provide Accurate Itemized Wage Statements; and (8) Unfair Business Practices (Cal. Business & Professions Code § 17200, *et seq.*). *See* **Exhibit A** to Bronchetti Decl.

7. The Complaint seeks, among other things, alleged unpaid wages/overtime, liquidated damages, statutory penalties, and attorneys' fees and costs on behalf of Plaintiff and the putative class. *See* **Exhibit A** to Bronchetti Decl., at Prayer for Relief.

8. In accordance with 28 U.S.C. § 1446(a), true and correct copies of all pleadings, process, and orders in the State Court file (except for the Complaint which is attached as **Exhibits A** to Bronchetti Decl.) are attached hereto as **Exhibit D** to the Bronchetti Decl.

### III.   TIMELINESS OF REMOVAL

9. This removal is timely. As the Ninth Circuit Court of Appeal has held and clarified, removal under the Class Action Fairness Act ("CAFA") is timely at any time so long as (1) the face of the complaint does not plainly allege all elements needed for removal (including the amount in controversy), and (2) plaintiffs have not served some other "paper" which concedes all elements needed for removal. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125–26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3); "a defendant's subjective knowledge cannot convert a non-removable action into a removable one such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant"); *see also Rea v. Michaels Stores Inc.*, 742 F. 3d 1234, 1238 (9th Cir. 2014) (reaffirming *Roth*'s holding;

"We also recently held in *Roth v. CHA Hollywood Medical Center, L.P.*, that the two 30-day periods are not the exclusive periods for removal. [Citation]. In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *see also Taylor v. Cox Commc'ns. California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("We also hold that Defendants' second Notice of Removal was timely. 'A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.'").

10. Because removability is not apparent from the face of the Complaint or any other paper received by Lockton, the removal clock has not started to run. Therefore, Lockton may "remove outside the two thirty-day periods on the basis of its own information." *Roth*, 720 F.3d at 1125. Nonetheless Lockton has removed within the two thirty-two-day periods. This removal is therefore timely.

### IV. STATEMENT OF THIS COURT'S JURISDICTION

11. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress").

12. Further, CAFA jurisdiction—at issue here—is a favored form of jurisdiction. CAFA applies to "any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); **Exhibit A** to Bronchetti Decl., Complaint, ¶ 23 ("Plaintiff brings claims individually, as well as on behalf of each and all other persons similarly situated, and seek class certification under California Code of Civil Procedure § 382.").

5
**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**

13.     CAFA jurisdiction is uniquely subject to no antiremoval presumption. Through CAFA, Congress has expressed its "overall intent . . . to strongly favor the exercise of federal jurisdiction over class actions with interstate ramifications." *Jordan v. Nationstar Mort. LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015) (*quoting Dart Cherokee*, 574 U.S. at 89). "[A]ll doubts [are] resolved 'in favor of exercising jurisdiction over the case.'" *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016) (*quoting Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006); *see also Reece v. AES Corp.*, 638 F. App'x. 755, 767–68 (10th Cir. 2016) (same). Unlike other forms of removal jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89; *see also Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) ("there was no presumption against [CAFA] removal jurisdiction"; CAFA should be read "with a strong preference that interstate class actions should be heard in a federal court").

14.     This Court has original jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a). Specifically, this is a putative civil class action wherein: (1) the proposed class contains at least 100 members; (2) no Defendant is a state, state official or other governmental entity; (3) there is required diversity among the parties to this action; and (4) the total amount in controversy for all putative class members exceeds $5 million. Therefore, CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446, and this Court should exercise the jurisdiction given to it under CAFA.[2]

### A.     The Putative Class Consists of More Than 100 Members.

15.     Jurisdiction is proper under CAFA if the putative class contains at least 100 members. 28 U.S.C. § 1332(d)(5)(B). While Lockton denies that class treatment is

---

[2] Lockton denies Plaintiff's claims and denies that the Action may be certified as a class action. However, for purposes of establishing removal under CAFA, Plaintiff's allegations identify a putative class of more than 100 members (**Exhibit A** to Bronchetti Decl., Complaint, ¶ 28(a)) and put in controversy an amount that exceeds $5 Million in the aggregate.

6
**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**

permissible or appropriate here, the proposed class, as alleged, consists of over 100 members.

16. Plaintiff seeks to represent and certify the following putative class: "All persons who worked for any Defendant in California as an hourly, non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice of class certification to the Class is sent." **Exhibit A** to Bronchetti Decl., Complaint, ¶ 25.

17. Lockton has employed over 350 (substantially more than 100) hourly-paid and/or non-exempt employees in California within the four years prior to the filing of the Complaint. *See* Declaration of Beth Truax ("Truax Decl.") ¶ 6. Thus, the class, as defined in the pleadings, exceeds 100 members.

### B. Defendant is not a Governmental Entity.

18. Lockton is not a state, state official, or other governmental entity.

### C. Minimal Diversity Exists.

#### 1. Plaintiff's Citizenship

19. For removal purposes, a person is a "citizen" of the state in which he or she is domiciled. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A party's residence is prima facie evidence of his or her domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885-86 (9th Cir. 2013). "Existence of diversity jurisdiction is determined by the citizenship of the parties at the time of the filing of the complaint, not at the time the cause of action arose or after the action is commenced." *Mann v. City of Tucson, Dept. of Police*, 782 F.2d 790, 794 (9th Cir. 1986).

20. Plaintiff alleges that he "is a California resident that worked for Defendants in the County of San Diego, State of California." *See* **Exhibit A** to Bronchetti Decl., Complaint, ¶ 7. This allegation is sufficient to establish that Plaintiff resides within the State of California. *See Mondragon*, 736 F.3d at 885 (stating that "a party with the burden of proving citizenship may rely on the presumption of continuing domicile [and] once

established, a person's state of domicile continues unless rebutted with sufficient evidence of change").

### 2. Defendants' Citizenship

#### (a) Defendant Lockton Companies, LLC's Citizenship

21. Under CAFA, an LLC is considered "a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. 1332(d)(10); *see also Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *2 (S.D. Cal. July 5, 2019 (applying § 1332(d)(10) to LLC citizenship test under CAFA); *Hernandez v. Pure Health Rsch. LLC*, 2023 WL 7029213, at *3 (following *Ramirez* and *Jack v. Ring* LLC, 553 F.Supp.3d 711, 715 (N.D. Cal. 2021) in holding "that in a CAFA case, where a party is an LLC, the LLC's citizenship shall be the State under whose laws it is organized and the State where it has its principal place of business.").

22. A company's "principal place of business" for the purposes of 28 U.S.C. § 1332 is its "officers direct, control, and coordinate the corporation's activities," or its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).

23. Defendant Lockton Companies, LLC is a limited liability company organized under the laws of the State of Missouri and has its principal place of business in Kansas City, Missouri. Truax Decl., ¶ 3. It is a non-operating entity that does not have any employees. *Id.*

#### (b) Defendant Lockton Insurance Brokers of San Diego, Inc.'s and Defendant Lockton Companies, LLC – Pacific Series' Citizenships

24. Defendant Lockton Insurance Brokers of San Diego, Inc. no longer exists. Defendant Lockton Insurance Brokers of San Diego, Inc. was originally incorporated under the laws of the State of California, with its principal place of business in Kansas City, Missouri. *See* Truax Decl., ¶ 4. On December 31, 2006, Defendant Lockton Insurance

Brokers of San Diego, Inc. merged with non-party Lockton Insurance Agency, Inc. of Missouri. Truax Decl., ¶ 4. Lockton Insurance Agency, Inc. of Missouri was the surviving corporation from the merger. *Id.* Lockton Insurance Agency, Inc. of Missouri was incorporated under the laws of the State of Missouri and its principal place of business was in Kansas City, Missouri at the time of the merger. On April 1, 2016, Lockton Insurance Agency, Inc. converted into a limited liability company that is organized under the laws of the State of Missouri and its principal place of business is in Kansas City, Missouri. *Id.*

25. With respect to a merged company, a court only considers the citizenship of the surviving entity and disregards the citizenship of the merged entity. *See Meadows v. Bicrodyne Corp.*, 785 F.2d 670, 671-72 (9th Cir. 1986).

26. Defendant Lockton Companies, LLC – Pacific Series no longer exists. Defendant Lockton Companies, LLC – Pacific Series was originally organized under the laws of the State of Missouri, with its principal place of business in Los Angeles, California. Truax Decl., ¶ 5. On December 31, 2024, Defendant Lockton Companies, LLC – Pacific Series contributed all of its assets to the Mountain West Series of Lockton Companies, LLC, which assumed all of the liabilities of Defendant Lockton Companies, LLC – Pacific Series. *Id.* The Mountain West Series of Lockton Companies, LLC was a limited liability company organized under the laws of the State of Missouri, with its principal place of business in Denver, Colorado. *Id.* On approximately December 31, 2024, Defendant Lockton Companies, LLC – Pacific Series dissolved. *Id.* Around this same time, the Mountain West Series of Lockton Companies, LLC, changed its name to West Series of Lockton Companies, LLC. *Id.*

27. Where an entity, prior to the filing of the complaint, "dissolved, has no operations, and its liabilities have been transferred" to another entity, it is a "nominal part[y] with nothing at stake [and] may be disregarded in determining diversity despite the propriety of [its] technical joinder." *Strotek Corp. v. Air Transport Ass'n of America*, 300 F.3d 1129, 1133 (9th Cir. 2002) (citations omitted).

**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**

28. Because Plaintiff is deemed a citizen of California and none of the Defendants are citizens of California for purposes of 28 U.S.C. § 1332(d), the Parties are adequately diverse. 28 U.S.C. § 1332(d)(2).

### D. The Amount in Controversy Exceeds $5 Million.

29. CAFA requires that the amount in controversy in a class action exceed $5 Million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). In determining the amount in controversy, CAFA requires courts to aggregate the claims of all individual class members. 28 U.S.C. § 1332(d)(6).

30. This jurisdictional element concerns "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). A court does not weigh the merits of the claims; rather, in assessing whether the amount-in-controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

31. To satisfy this burden, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. A defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (quotations and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs.,*

*Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87.

32. Moreover, in calculating the amount placed in controversy, defenses that a defendant may assert—such as a statute of limitation—are not considered. *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969) ("[T]he possibility of such a defense being valid does not affect the jurisdiction of the district court to hear and determine the controversy"); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) (that "a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense"); *Pagel v. Dairy Farmers of Am. Inc*, 2013 WL 12166177, *6 (C.D. Cal. July 9, 2013) (the Ninth Circuit has admonished against preliminary adjudication of affirmative defenses and defenses should not pose a barrier to jurisdiction); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, *15 (C.D. Cal. Feb. 14, 2017) (affirmative defenses may not be considered in calculating the amount in controversy); *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, *10 (C.D. Cal., June 22, 2012) ("the fact that [defendant] may assert a limitations defense does not limit the relief sought in the complaint"); *Lara v. Trimac Transp. Services (Western) Inc.*, 2010 WL 3119366, *3 (C.D. Cal., August 6, 2010) ("affirmative defenses . . . may not be invoked to demonstrate that the amount in controversy is actually less than the jurisdictional limits.").

33. Although Lockton denies that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal only, if Plaintiff were to prevail on every claim and allegation in his Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 Million.

34. Lockton reserves the right to present additional evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests

the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof") (quotations and citations omitted). "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.

### 1. Plaintiff's Minimum Wage Claim Places at least $2.5 Million in Controversy.

35. Plaintiff's claim for failure to pay minimum wages pursuant to California Labor Code sections 204, 1194, 1197, and 1197.1 puts at least $2.5 Million in controversy.

36. If an employer pays wages of less than minimum wage, the employee "is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage." Cal. Lab. Code § 1194(a). In addition, the "employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid." Cal. Lab. Code § 1194.2.

37. Plaintiff alleges that he and other putative class members were not paid minimum wages for hours they worked. *See* **Exhibit A** to Bronchetti Decl., Complaint, ¶ 35(a) ("Defendants have: (a) Failed to pay Class Members for all hours worked, including minimum wages…."). He alleges this happened because "Plaintiff and the Class were regularly contacted by their supervisors off-the-clock regarding work-related matters and tasks such as coordinating with teams, managing resources, tracking project progress, communicating with stakeholders, and assisting other employees and customers with compensation. Further, Plaintiff and the Class were required to attend mandatory meetings and events outside of their scheduled shifts without compensation." *Id.* at ¶ 17. Plaintiff further alleges that Lockton "maintained a systematic, company-wide policy and practice of: (a) Failing to pay employees for all hours worked, including all minimum wages…." (*Id.* at ¶ 4(a).)

12
**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**

38. Accordingly, Plaintiff alleges that he and putative class members "are entitled to recover" the unpaid wages plus "liquidated damages (double damages)." *Id.* at ¶ 39, Prayer for Relief, ¶¶ 5, 7. In other words, Plaintiff seeks to recover double the allegedly unpaid minimum wages: the wages themselves and liquidated damages in equal amount.[3]

39. Based on these allegations—including Plaintiff's allegation that the failure to pay minimum wages was due to Lockton's "policy and practice"—it is reasonable to assume, for the purposes of this jurisdictional analysis only, that each putative class member worked at least one unpaid hour per week. *See Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993-94 (9th Cir. 2022) (accepting an assumption of one unpaid hour of minimum wage per workweek as reasonable); *Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *13-14 (C.D. Cal. Sep. 16, 2022) (accepting defendant's estimate of "five hours of minimum wage per week" due to plaintiff's allegation that "minimum wage violations are alleged to have occurred as a policy and practice"); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC(RAOx), 2019 U.S. Dist. LEXIS 171460, at *10 (C.D. Cal. Oct. 1, 2019) (accepting defendant's assumption of "one hour of off-the-clock work . . . per workweek" based on plaintiff's allegations of a "policy and practice" of failure to pay minimum wage); *Arreola v. Finish Line*, No. 14–CV–03339–LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent" practice supports assumption that every class member "experienced at least one violation once per week"); *Francisco v. Emeritus Corp.*, No. CV 17-2871-BRO (SSx), 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per

---

[3] Courts routinely include such liquidated damages in amount in controversy calculations. *See, e.g.*, *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 995 n.7 (9th Cir. 2022) ("This figure was calculated by using the same formula relied on by the district court: multiplying the hourly wage ($10.50) with the number of workweeks (63,431) for a total of $666,025.50. That number is then doubled for the liquidated damages, for a total of $1,332,051.").

workweek to be reasonable." (citing *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648-49 (9th Cir. 2012)); *see also Jasso v. Money Mart Exp., Inc.*, No. 11–CV–5500, 2012 WL 699465, at *5-6 (N.D. Cal. Mar. 1, 2012) (examining how the complaint informs what is a reasonable amount-in-controversy calculation and holding that a "policy" of violations permits a defendant to assume one violation per week); *Cabrera v. S. Valley Almond Co., Ltd. Liab. Co.*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881, at *24 (E.D. Cal. Dec. 16, 2021) (finding an assumption of one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion,'" considering the allegation that violation were due to defendant's "policies and/or practices.").

40. Artificially limiting the claim to the period four years prior to the filing of Plaintiff's Complaint to approximately one month before this removal (specifically, between February 28, 2021, and March 20, 2024), putative class members earned on average $36.42/hour and worked at least 34,419 workweeks. *See* Truax Decl. ¶ 6. Based on the reasonable assumption of 1 unpaid hour of work per workweek at the employee's standard hourly rate of pay, this claim places in controversy at least **$2.5 Million**, calculated as follows:

| 34,419 workweeks x 1 hour x $36.42/hour | $1,253,539.98 in unpaid minimum wages |
|---|---|
| 34,419 workweeks x 1 hour x $36.42/hour | $1,253,539.98 in liquidated damages |
| Amount in Controversy (unpaid minimum wage + liquidated damages) | **$2,507,079.96** |

### 2. Plaintiff's Unpaid Overtime Claim Places at least $1.8 Million in Controversy.

41. Plaintiff's claim for unpaid overtime pursuant to California Labor Code sections 1194 and 1198 places at least $1.8 Million in controversy.

42. If an employer fails to pay overtime wages, the employee "is entitled to recover in a civil action the unpaid balance of this full amount of this…overtime compensation."

**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**

Cal. Lab. Code § 1194(a). In addition, the "employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid." Cal. Lab. Code § 1194.2.

43. Plaintiff alleges that he and other putative class members were not paid overtime wages for hours of overtime they worked. *See* **Exhibit A** to Bronchetti Decl., Complaint, ¶ 46 ("Defendants failed to pay Plaintiff and the Class overtime compensation for the hours they worked in excess of the maximum hours permissible by law…."). He alleges this happened because "Defendants maintained a policy and practice of not paying Plaintiff and the Class for hours worked," including use of "a system of time rounding in a manner that resulted, over a period of time, in failing to compensate Plaintiff and the Class properly for all time they have actually worked." *Id.* at ¶ 17. Plaintiff further alleges that Lockton "failed to incorporate all remuneration when calculating the correct overtime rate of pay." *Id.*

44. As discussed above, an estimate of one unpaid hour of overtime per employee is an appropriate benchmark for determining the amount placed in controversy for this claim. *See* § IV(D)(1), ¶ 40.

45. Again, artificially limiting the claim to the period four years prior to the filing of Plaintiff's Complaint to approximately one month before this removal (specifically, between February 28, 2021, and March 20, 2024), putative class members earned on average overtime rate of $54.63/hour and worked at least 34,419 workweeks. *See* Truax Decl. ¶ 6. Based on the reasonable assumption of one (1) unpaid hour of overtime work per workweek, this claim places in controversy at least **$1.8 Million**, calculated as follows:

| 34,419 workweeks x 1 hour x $54.63/hour | $1,880,309.97 in unpaid overtime wages |
| Amount in Controversy (unpaid overtime wages) | **$1,880,309.97** |

### 3. Plaintiff's Meal Period and Rest Break Claims Place at Least $2.5 Million in Controversy.

46. Plaintiff's claims for failure to provide meal periods and rest breaks pursuant to California Labor Code section 226.7 and 512 place at least $2.5 Million in controversy.

47. If an employer fails to provide a compliant meal period or rest break, the employee is entitled to one hour of premium pay at the employee's regular rate of pay. *See* Cal. Labor Code § 226.7(c). Under California law, meal and rest period premiums are considered wages. *See Naranjo v. Spectrum Security Services, Inc.*, 13 Cal.5th 93, 117 ("In short, missed-break premium pay constitutes wages….").

48. Assuming, conservatively, that Plaintiff and the putative class members suffered one (1) non-compliant meal period and one (1) non-compliant rest period each week between February 28, 2021, and March 20, 2024, and based on the average hourly rate of $36.42/hour for the putative class members, these two claims place in controversy at least **$2.5 Million**, calculated as follows:

| | |
|---|---|
| 34,419 workweeks x 1 hour x $34.62/hour | $1,253,539.98 in unpaid meal period premiums |
| 34,419 workweeks x 1 hour x $34.62/hour | $1,253,539.98 in unpaid rest period premiums |
| Amount in Controversy (unpaid meal and rest period premiums) | **$2,507,079.96** |

### 4. Just Four of Plaintiff's Claims Place at Least $6.8 Million in Controversy.

49. Applying the conservative assumptions above to just four of Plaintiff's eight causes of action, the Complaint places at least **$6.8 Million** in controversy.

50. This amount does not include the amount placed in controversy by Plaintiff's other claims, including his claims for wage statement violations, untimely final wages, or failure to reimburse. Nor does it include attorneys' fees, which Plaintiff seeks in the event he prevails in this action, which would increase the amount placed in controversy by 25%. *See* **Exhibit A** to Bronchetti Decl., Complaint, Prayer for Relief; *see also Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *see Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *12 (C.D.

Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

51. In sum, Plaintiff's allegations place substantially more than the requisite $5 Million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

## V. VENUE

52. The action was filed in the Superior Court of the State of California for the County of San Diego. Venue properly lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 84(c), 1391, 1441(a).

## VI. SERVICE ON THE STATE COURT

53. Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of this Notice of Removal in the United States District Court for the Southern District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the San Diego County Superior Court.

WHEREFORE, the action is hereby removed in its entirety to this Court from the Superior Court of the State of California, County of San Diego.

Respectfully submitted,

Dated: April 25, 2025

GREENBERG TRAURIG, LLP

By *s/ Ellen M. Bronchetti*
Ellen M. Bronchetti
Daniel S. Smith

Attorneys for Defendants
LOCKTON COMPANIES, LLC, LOCKTON INSURANCE BROKERS OF SAN DIEGO, INC., and LOCKTON COMPANIES, LLC – PACIFIC SERIES

17
**DEFENDANTS' NOTICE OF REMOVAL OF CLASS ACTION**